ANTHONY P. X. BOTHWELL, SBN 200740
Law Offices of Anthony P. X. Bothwell
558 Presidio Blvd., Ste. B
Post Office Box 29547-0547
Tel. (415) 370-9571
E-mail: apxb007@msn.com

Attorney for Plaintiff, Cynthia Farr

## UNITED STATES DISTRICT COURT
### District of Northern California

| | |
|---|---|
| CYNTHIA FARR, | Case No. 3:21-cv-8099 |
| | **JURY DEMANDED** |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | 26 U.S.C. 2000e-5 |
| | 29 U.S.C. 158 |
| PACIFIC GAS & ELECTRIC CO., | 29 U.S.C. 654 |
| Respondent | |

**I .   INTRODUCTION**

1 .   Pacific Gas & Electric Co. (PG&E) retaliated against Cynthia Farr (Farr) for having filed and injurious conditions.

**II .   PARTIES**

2 .   The plaintiff is Cynthia Farr (Farr), a citizen of California.

3 .   The respondent is Pacific Gas & Electric Company (PG&E), a corporation headquartered in San Francisco.

**III .   JURISDICTION**

4 .   The United States District Court has jurisdiction because this case is a civil action arising under the laws of the United States. 28 U.S.C. § 1331.

1

## IV. VENUE

5. This Court has jurisdiction because the defendant is headquartered in San Francisco, and the counsel for both parties are in San Francisco. 28 U.S.C. § 1391(b)(1), (c)(2).

## V. FACTS OF THE CASE

6. On May 1, 2017 Cynthia Farr (Farr), a Pacific Gas & Electric Company (PG&E) employee in West Sacramento, was injured at work when trying to open a phone-booth room door at work and consequently had to seek physician's care, but the supervisor, Stacy Nichols (Nichols) harassed Farr for consulting the physician.

7. Nichols exhibited extreme hostility after Farr objected to the harassment for having sought doctor's care for the workplace injury.

8. Nichols was provided names of witnesses regarding the injury and subsequent harassment, but PG&E officials did not interview any of Farr's witnesses.

9. Farr was absent from work under doctor's orders while recovering from the workplace injury.

10. On May 1, 2017 Farr applied for unemployment compensation; six days later, on May 7, 2017 PG&E management ordered Farr report to work under threat of "termination of employment."

11. Unlike other employees in similar situations, Farr, who is African American, was required to call in every morning during her recovery from injury.

12. Nichols became hostile because Ms. Farr objected to improper actions.

13. On or about October 26, 2017 – and again on or about February 14, 2018 – Farr attended a meeting with Nichols in regard to the reporting of sick time. Nichols provided "coach and

counsel" discipline against Farr for having reported, in accordance with management instructions, sick days. Kevin Kummers, the International Brotherhood of Electrical Workers (IBEW) representative, informed Nichols that there was no justification for the "coach and counsel" discipline against Farr.

14. On or about April 12, 2018 at approximately 1:00 p.m. Farr was injured in an automobile accident which caused aggravation of her earlier injury.

15. Dr. Karun Grossman (Grossman) ordered Farr on leave from work on account of her medical condition April 12 to May 7, 2018 and then from May 7 to June 4, 2018. She filed a workers compensation claim. State disability was approved. Unlike other employees in similar situations, Farr was required to call in every morning.

16. April 26, 2018 Nichols stated that Farr was Absent Without Leave and that Farr would be fired if "authorized" leave of absence was not "approved" by May 7, 2018.

17. On May 7, 2018 Ms. Farr was ordered to return to work under threat of termination of employment.

18. When recording days on which she was off work under doctor's orders, Farr used the time code which management instructed her to use. However, Nichols charged Sick No Pay days against Farr on nine dates between May 23 and September 6, 2018. Nichols Oct. 10, 2017 had told employees that Sick No Pay means "violation of administrative policy."

19. July 10, 2018 Farr was required to return to work while on Family & Medical Leave Act (FMLA) status and without a medical release. Nichols ordered Farr to report to a different job at a different location, a PG&E local office at 555 Florin Perkins Road, in Sacramento. Nichols refused to provide a job description for the new assignment. She was forced to work despite the

fact that her physician had ordered PG&E to keep Farr off work for more than one additional month until August 13, 2018.

20. Farr, to no avail, asked Nichols for a copy of PG&E policy relevant to requiring an employee to return to work while on FMLA and without a medical release.

21. Farr, to no avail, asked who would be her supervisor at the new location.

22. Farr, to no avail, asked what would be the duties of the new job, the hours of work, attire, expectations, and potential overtime. Nichols said Farr must accept the assignment or lose all benefits, and forced her to work outside the job description and without pay.

23. On July 17, 2019 Farr's Transitional Task Assignment began at 5555 Florin Perkins Road. Eventually Farr learned of a General Task Description: "greets customers in lobby of payment center and provides assistance to customers operating payment kiosk" and "changes receipt paper…cleaning of kiosk…stocks brochures in front lobby."

24. On July 26, 2018 Farr was ordered to remain in an open lobby during a reported "live shooter incident" in PG&E's 5555 Florin Perkins Road office when other workers including security staff hid behind bulletproof glass. Employees were informed by Corporate Security that a caller said he was going to shoot everyone in the office where Farr was a greeter.

25. All of the other employees at 5555 Florin Perkins Road, including Corporate Security and employees from other departments, were ordered into "lockdown" and were instructed to gather behind the bulletproof glass, but Farr was ordered to remain in the open area in front of the bulletproof glass during the "live shooter incident." Farr stated that she did not feel safe and could not do her job there in the circumstances.

26. Nichols and other management officials threatened Farr with termination of employment unless she continued to work in the environment in which she stated, "I don't feel safe." Nichols,

1  answering Farr, said, "We can fire you for being insubordinate." Farr asked Nichols to put the
2  order in writing; Nichols refused.
3  27.    Farr suffered dangerously high blood pressure, extreme mental and emotional distress
4
5  and physical illness as a consequence of being forcibly separated from coworkers and made to
6  remain in harm's way, at potential risk to her life, during the "live shooter incident." She called
7  the PG&E nurses' hotline and was instructed to stay off work.
8  28.    The workers comp physician told PG&E she was experiencing a nervous condition, as a
9  consequence of the shooter incident.
10
11 29.    Farr was under physicians care and under medical instructions to stay off work until
12 January 21, 2018, as a consequence of the effects of PG&E management mishandling of the
13 "live shooter incident." Management officials who imposed that circumstance upon her have
14 continued to subject Farrr to extreme hostile treatment on an ongoing basis to the present day.
15 30.    Farr repeatedly reported to Human Resources and management officials that she was
16
17 forced to work in an unsafe environment, was treated differently than employees who are not
18 African American, and was disciplined for having reported management misconduct and unsafe
19 working conditions to officials of PG&E and the IBEW.
20 31.    Farr provided names of witnesses to the management misconduct and unsafe conditions
21 she alleged, but Human Resources did not interview her witnesses.
22
23 32.    For more than two years Farr's routine interactions with her supervisor have been met
24 with angry and threatening responses, fostering an extreme hostile work environment. From her
25 vantagepoint, it is a living daily nightmare.
26 33.    On October 21, 2019 Farr claim filed against PG&E in US Bankruptcy Court, her
27 retaliation claim, pursuant to the California Labor Code § 98.6, in the United States Bankruptcy
28

Court (case no. 19-30089 against PG&E Company, and case no. 19-30088 against PG&E Corporation), for monetary damages and equity to remedy injuries which PG&E has caused by its conduct in violation of the Civil Right Act of 1964, 2 U.S.C. § 2000e-5; the Occupational Safety and Health Act, 29 U.S.C. § 654; the National Labor Relations Act, 29 U.S.C. § 158; and California Labor Code § 98.6. Her claim in Bankruptcy Court alleged wrongful acts by management May 21, 2017 to October 21, 2019.

34 .  October 22, 2019 PG&E fired Farr in retaliation for her having filed a claim with the U.S. Bankruptcy Court.

35 .  As of October 28, 2019 the PG&E website listed Janet Loduca (Loduca) as PG&E Senior Vice President and General Counsel.

36 .  October 28, 2019 Farr complained to PG&E counsel, with copy to the U.S. Equal Employment Opportunity Commission (EEOC), citing the Civil Rights Act of 1964, 2 U.S.C. § 2000e-5

37 .  On October 28, 2019 Farr complained to PG&E counsel, with copies to the State Labor Commissioner and the U.S. Occupational Safety & Health Administration (OSHA).

38 .  On October 29, 2019 the alleged retaliation was reported to the National Labor Relations Board (NLRB), in addition to OSHA, the EEOC, and the California Labor Commissioner.

39 .  On November 10, 2019 Farr filed a complaint against PG&E directly the EEOC.

40 .  On January 2, 2020 a PG&E-IBEW grievance settlement for Cynthia Farr, operating clerk, said: "On or about 10/22/19, Grievant was terminated...without prejudice...settlement agreement...will be reinstated...at the Woodland HQ's (50 Kentucky Ave) effective January 6, 2020...one-time payment of $4325.22. ...HRA/HSA banks will be restored to the amount as of

the date of termination." However, PG&E violated the promise of grievance settlement to restore Health Savings Account (HSA) and Health Reimbursement Arrangement (HRA) accounts.

41.     On August 29, 2020 PG&E Security required Farr, an African American female, to provide identification upon entering a PG&E office building, while a similarly situated white male was allowed to enter without providing identification.

42.     May 20, 2021 Farr's attorney wrote to Loduca: "Your agents, without my knowledge or consent, recently contacted my client directly and offered her a ...settlement of all claims (including, but not limited to, the bankruptcy claim which on May 19, 2021 you offered to settle for...)." (Elipses indicate redaction of privileged information."

43.     On September 27, 2020, Farr's attorney wrote to Laduca: 'It came to my attention that PG&E representatives [ ¶ ] Please explain to me how you reconcile PG&E's conduct in this matter with the Rules of Professional Conduct, Rule 2-100 on Communication with a Represented Party."

44.     Stacy Campos (Campos), Stacy, PG&E Managing Counsel, on May 25, 2021 informed Farr's attorney that "Ms. Loduca is no longer employed by PG&E."

45.     On June 2, 2021, Farr's attorney asked Campos when Ms. Loduca ceased to be counsel for PG&E. Campos ignored the questiondid not respond.

**VI.     CAUSES OF ACTION**

<u>**First Cause of Action:**</u>

<u>**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**</u>

46.     PG&E terminated Farr's employment in retaliation for filing her claim in U.S. Bankruptcy Court. The termination was substantially motivated by a violation of public policy.

The discharge caused Farr economic harm as well as mental and emotional distress and damage to reputation.

47. Retaliation for filing a claim in Bankruptcy Court is against the public policy of the United States. Retaliation for filing a claim in court is against the public policy of California. Retaliation for filing a claim for workers compensation also is a violation of the public policy of California.

### Second Cause of Action:

### DISCRIMINATORY TREATMENT AT WORK

### Civil Rights Act of 1964, 2 U.S.C. § 2000e-5

48. PG&E, because of Farr's race, gender, and prior EEO activity, subjected her to a hostile work environment, discharged her, and violated a grievance settlement as described in this complaint.

### Third Cause of Action:

### RETALIATION FOR PROTECTED DISCLOSURES

### Occupational Safety & Health Act, 29 U.S.C. § 654

49. PG&E, because of Farr's having disclosed unsafe working conditions, subjected her to a hostile work environment, discharged her, and violated a grievance settlement, as described in this complaint.

### Fourth Cause of Action:

### UNFAIR LABOR PRACTICE

### National Labor Relations Act, 29 U.S.C. § 158

50. PG&E violated a grievance settlement in regard to the termination of her employment, as described in this complaint.

## VII. PRAYER FOR REMEDIES

51. The plaintiff Cynthia Farr respectfully requests:

$2,000,000 (two million dollars) compensatory damages.

$10,000,000 (ten million dollars) punitive damages.

Dated: October 14, 2021

  *s/*Anthony P.X. Bothwell

ANTHONY P. X. BOTHWELL